RILEY, AUDITOR OF PUBLIC ACCOUNTS, *v.* GADDIS.*

(Division B.   Feb. 28, 1927.   Suggestion of Error Overruled March 28,
1927.)

[111 So. 739.   No. 26318.]

1. TAXATION.   *Question of whether value of timber on land was
considered by board of supervisors in approving assessments is
res judicata (Hemingway's Code, section 7058).*

    Question of whether value of timber on land was taken into con-
    sideration by board of supervisors in approving assessment is
    *res judicata,* and cannot be questioned in proceeding by reve-
    nue agent to back-assess standing timber, under Code 1906, sec-
    tion 4740 (Hemingway's Code, section 7058).

2. TAXATION.   *Subsequent judgment of board of supervisors, after ap-
proval of assessment approving back assessment of timber taxes
with owner's consent, held res adjudicata (Hemingway's Code,
section 7058).*

    Where, after approval of assessment by board of supervisors, the
    board subsequently, with the consent of landowner, approved
    back assessment by the state revenue agent, under Code 1906,
    section 4740 (Hemingway's Code, section 7058), for timber, with
    no appeal therefrom by either party, the last judgment is *res
    judicata.*

*Corpus Juris-Cyc. References: Judgments, 34CJ, p. 759, n. 93.
Taxation, 37Cyc, p. 1108, n. 62; p. 1109, n. 63; p. 1118, n. 8.

APPEAL from circuit court of Hinds county, First district.

HON. W. H. POTTER, Judge.

Mandamus by Mrs. Pauline J. Gaddis against George D. Riley, Auditor of Public Accounts. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*J. L. Byrd,* Assistant Attorney-General, for appellant.

Appellee relies on *Miller, State Revenue Agent,* v *Copeland's Estate,* 104 So. 176, but we submit that she is not in the same position as Copeland's estate. In the Copeland case objection was made to the back assessment at the very first opportunity when objection could be made, and it was appealed to the circuit court and finally to the supreme court; but in this case the appellee not only did not object to the assessment and did not appeal to the circuit court, but admitted and agreed to the correctness of the assessment and paid the taxes levied as a result of the assessment.

We think that under the Copeland case if the appellee, instead of agreeing and consenting to the back assessment and paying the taxes, had stood on the former assessment of the board of supervisors, she could have successfully defeated the assessment under the authority of the Copeland case; but instead of doing that, she agreed and consented for the question of valuation to be re-opened, agreed and consented to the new valuation or additional assessment, and paid the taxes on the last or additional assessment. In doing this we submit that she waived her right to object to re-opening the question of valuation and that she is now estopped to say that the board of supervisors had no authority to back assess this timber.

To hold that the appellee could come into court and set aside the judgment of the board of supervisors of Yazoo county in this proceeding would be to hold that a

collateral attack may be made on a valid judgment in such manner. The board of supervisors had jurisdiction of the parties. There can be no question about this and under section 7508, Hemingway's Code the board had jurisdiction of the subject-matter. *Bennett Brothers* v. *Dempsey,* 48 So. 901. *McKinney et al.* v. *Adams,* 50 So. 474, defines a collateral attack.

In *Moore et al.* v. *Ware,* 51 Miss. 206, this court held that "where the court had jurisdiction of the subject-matter and the parties, its judgments, though irregular and erroneous, are conclusive so long as unreversed, and cannot be attacked collaterally." See, also, *Wall, Executor,* v. *Wall,* 28 Miss. 409; *Revenue Agent* v. *Clark,* 80 Miss. 134; *Tupelo* v. *Beard,* 56 Miss. 532.

The court cannot overthrow the presumption of law that all of the officers connected with this matter did their duty as required by law without some proof or some charge to the effect that they did not. *Cotton* v. *Harlan,* 124 Miss. 691.

The lower court erred in sustaining the demurrer, and this cause should be reversed.

*W. Harold Cox,* for appellee, and *Chambers & Trenholm, amici curiae.*

It is the law in Mississippi that "trees are a part and parcel of the land upon which they are growing and standing, for the term 'land' embraces not only the soil, but its natural productions; and trees growing or standing upon land are not distinguishable in their character of real estate from the soil itself until they are actually severed from the soil." *Harrell* v. *Miller,* 35 Miss. 702; *McKenzie* v. *Shows,* 70 Miss. 388; *Walton* v. *Lowery,* 74 Miss. 487; *Fox* v. *Lumber Company,* 80 Miss. 1; *Wilson* v. *Land Company,* 114 Miss. 197; *Hoop Co.* v. *Barnett et al.,* 127 Miss. 81.

Appellant does not contend that the land on which this timber was standing was not assessed, but insists

since the assessment roll did not show a valuation for tim-
ber that it had therefore escaped taxation.    This court
in *Bailey & Bean* v. *Wilson,* 128 Miss. 49, and *Miller* v.
*Holmes,* 110 So. 249, settled that question adversely to
appellant where the assessment rolls, the court held,
under chapter 135, Laws of 1918, were merely for the
information and consideration of the assessing officers
in setting out the various items to be considered and ar-
riving at the valuation of the land, and that the said
laws repealed section 89, Laws of 1912, which required
the standing timber to be assessed separately from the
land.   See especially *Miller* v. *Copeland,* 139 Miss. 788.

The authority of the revenue agent in these matters
is well defined by section 4740, Code of 1906, and must
be strictly complied with because it is a taxation stat-
ute and any other assumed authority would render his
acts absolutely void.

Appellee insists that the timber here was included in
the assessment of the land as it was growing on the land
as a part of it, and all belonged to the appellee; that
the former assessment which was made on the land was
*res adjudicata,* and that the revenue agent was with-
out authority to go behind this assessment and any of
his attempts so to do were *ultra vires* and void.    The
Copeland case is decisive.    The appellant concedes that
this case is authority for declaring the attempted back
assessment void in this case, but simply says that we
infused new life into the void judgment or assessment by
not protesting.

The legislature gave the revenue agent his authority
in such cases in section 4740, Code of 1906, and it does
not lie within the power of the individual taxpayer to
clothe the revenue agent with more power than was
vested in him by the body who brought him into existence.

Appellee's petition for mandamus, above referred to,
will disclose that she complained not that the property
was ever assessed at other than its true value, but that
she had been wrongfully assessed with the same prop-

erty for the second time, and that the taxes thereon were paid and that she now claims a refund for same. It was not necessary to show that the revenue agent's authority and acts were void in attempting this assessment, and in preserving her rights to complain, that she paid the taxes under protest. Chapter 196, Laws of 1926, has evidently been overlooked. This act has been held by this court to be both prospective and retroactive. *Riley* v. *Ammons,* 108 So. 296.

Appellant. insists that to allow us to claim·this refund to be due, since no protest or appeal was taken, would be to allow a collateral attack on a valid judgment. That goes to the very basis of appellee's contention, that this assessment was absolutely void *ab initio* and that a void assessment is a nullity and open to collateral attack. 24 Am. & Eng. Encyc. of Law, page 717; Volume 27, page 725.

The authority of the revenue agent to impose this additional assessment was a jurisdictional prerequisite to the validity of the assessment. 27 Am. & Eng. Law, page 722 and page 670, Void Assessments. His authority is clearly and definitely defined in section 4740, Code of 1906.

We agree that the valuations are correct, for the sake of argument, as shown by the order of the board of supervisors, but we were never placed in the attitude of agreeing to pay the taxes. Appellee simply agreed to the valuation and paid the taxes which this court later held she was not due to have paid. The legislature came along later and provided a law whereby such erroneously paid and undue taxes might be recovered and that law was both prospective and retroactive. *Riley* v. *Ammons, supra.* Now appellee simply occupies the position of asking the return of that property which is hers and does not belong to the state and to which it has never been entitled.

The revenue agent when this assessment was made by him was relying on section 4740, Code of 1906, for his

authority so to do. This is a special statute which clearly defines and restricts special duties of the revenue agent and board of supervisors with reference to back assessments and must, therefore, be strictly construed and interpreted.

The revenue agent's sole power and authority and the validity of the order of the board of supervisors approving same depended upon the fact in any particular case, that the property which they were back assessing was property *which had escaped taxation by reason of not being assessed.* That was the jurisdictional prerequisite to the revenue agent and the board of supervisors being vested with any powers whatever with reference to a back assessment.

The order of the board of supervisors in the instant case shows no such jurisdictional finding but, on the other hand, did find that it was approving *an additional assessment of standing timber,* and we contend that said order of itself thereby ousted the jurisdiction of said taxing board and rendered said order a nullity, and that same affords appellant no force in his plea of *res adjudicata* because thereof. *Adams* v. *Bank, supra; Boutwell* v. *Board of Supervisors,* 128 Miss. 337; *King* v. *Board of Sup'rs,* 133 Miss. 494.

*J. L. Byrd,* Assistant Attorney-General, in reply, for appellant.

It is a rule of law that presumptions yield to facts and though the appellee could have stood on the first assessment and claimed the presumption, yet she did not choose to do so; but came into court and admitted that the presumption of law was not supported by the facts and that the presumption was incorrect and though the law presumed the timber to have been assessed, yet as a matter of fact it was not assessed and she consented for it to be assessed.

146 Miss.—4.

By no stretch of the imagination can it be said that this was an erroneous payment. All of the cases which hold that the assessing officers are without authority to make additional assessments are, we submit, cases where the owner of the land objected and stood upon the judgment of the board of supervisors, but none of them deal with cases such as the present one.

ANDERSON, J., delivered the opinion of the court.

Appellee filed her petition in the first district of the circuit court of Hinds county against appellant for a mandamus requiring appellant, under the provisions of section 4346, Code of 1906 (section 6980, Hemingway's Code, as amended by chapter 196 of the Laws of 1926), to audit and allow, upon the approval of the attorney-general, certain timber taxes paid the state and county by her for the years 1919 and 1920, which appellee alleged in her petition had been erroneously paid. Appellant filed a special plea to the petition, to which special plea appellee demurred. The demurrer was sustained, and, appellant having declined leave to plead further, final judgment was entered in favor of appellee granting the prayer of her petition.

The petition for mandamus, leaving off the formal parts and exhibits, follows:

"That George D. Riley is the duly elected, qualified, and acting auditor of public accounts for the state of Mississippi for the term of office beginning on the —— day of January, A. D. 1924, and ending on the —— day of January, A. D. 1928.

"That your petitioner, during the years 1917, 1918, and 1919, inclusive, owned and now owns and controls certain timber lands and property in Yazoo county, Miss., hereinafter more specifically referred to, which was duly assessed for taxes for the years 1919 and 1920, and on which land she paid *ad valorem* taxes in accordance with the assessment thereon, during the years 1919

and 1920, inclusive, to the duly elected, qualified and act-
ing sheriff and tax collector of Yazoo county, Miss.

"That subsequently thereto, and on the 3d day of
May, 1924, the state revenue agent found that petitioner
was not, during the years aforesaid, separately assessed
with the standing timber on the said lands and property
on which she had theretofore paid the *ad valorem* taxes,
as aforesaid, to the sheriff and tax collector of Yazoo
county, Miss., and the state revenue agent, being fully
appraised in the premises, then and there back-assessed
your petitioner for the standing timber on the said lands
for an *ad valorem* tax, in addition to the tax already paid
on said lands, said additional tax being in the sum of one
thousand one hundred fifty-six dollars and twenty-nine
cents and the sum of four hundred twenty-seven dollars
and fifty cents for the years 1919 and 1920, which amounts
he alleged to be due, and demanded of your petitioner
therefor, and that, in pursuance to said back assessment,
the sheriff and tax collector of Yazoo county, Miss., did,
on the 3d day of May, 1924, wrongfully force and com-
pel petitioner to pay and wrongfully collected the afore-
said sums from your petitioner on said back assess-
ment of said standing timber on her said lands, all of
which more fully appears by reference to copies of cer-
tified copies of the original tax receipts, No. 85 for one
thousand five hundred fifty dollars and fifty cents and
No. 87 for five hundred eighty-eight dollars and seventy-
five cents duly properly executed by the said sheriff and
tax collector, and properly countersigned, and bearing
the description of said lands, all of which more fully ap-
pears thereon, which said receipts are hereto attached
and made a part hereof as Exhibits A and B respectively,
hereto.

"That said certified copies of said tax receipts, to-
gether with a legal claim or demand for refund of the
said timber taxes wrongfully collected, as aforesaid,
was duly, properly, and legally presented to and filed
with Geo. D. Riley, auditor of public accounts of the

state of Mississippi, on the 21st day of May, A. D. 1926, by petitioner, for auditing, approving, etc., as required by law. That said auditor, in due course, received and considered said claims, but did, on the 25th day of May, 1926, return said claims, and declined and refused to audit said claims, approve same, issue his warrant on the state treasurer for the state's *pro rata* of such re-- fund, and to certify his audit to the secretary of the levee board, and the clerk of the board of supervisors of said county and state for their *pro rata* of this refund due your petitioner, and said Geo. D. Riley, auditor of public accounts, utterly declined and refused to do all of such things as he is required by law to do in such cases. That your petitioner is without a plain, adequate, and speedy remedy in the ordinary course of law.

''Premises considered, petitioner prays that the prop· er process issue, returnable to the next regular return day of this court, and, upon hearing of this petition, petitioner prays that said matters and things be in· quired into, that said claims of petitioner be taken and accepted and adjudged legal demands on the state, county, and levee district, as their interests appear, and to have been wrongfully extorted and collected from peti- tioner, and petitioner further prays that it be ordered and adjudged that she has made proper and legal demand and claim, as prescribed by law, of the auditor of public accounts, and that said auditor should audit and approve same, issue his warrant on the state treasurer for the state's part of the refund due, and certify his audit and approval to the county and levee district, as provided by law, for a refund of their respective· parts of this de- mand, and that a writ of mandamus issue, under the seal of this court, directing and compelling the said Geo. D. Riley, auditor of public accounts to do the mat- ters and things required of him under the law, in such cases, in this state, and petitioner prays for such other and further relief as she may deserve and this petition may warrant.''

Appellant's special plea to the petition for mandamus, leaving off the formal parts and exhibits, follows:

"And now comes the defendant, George D. Riley, auditor of public accounts, by his attorney, and leave of the court first having been had, files this his special plea No. 1 to the petition for writ of mandamus exhibited against him in the above-styled cause, and says *actio non*, because he says that on the ——— day of March, 1924, the said plaintiff and the said revenue agent, W. J. Miller, agreed in writing to the assessment of the timber on the lands in question in this suit, and that subsequently on the ——— day of April, 1924, the board of supervisors of Yazoo county, Miss., acting by and under the authority of the statutes in such case made and provided, after having given notice thereof as required by law, and by agreement of the said plaintiff entered a judgment, which said judgment back-assessed or confirmed the back assessment of the said standing timber as aforesaid as will be seen by reference to Exhibit A hereto, and that said judgment became final and was not appealed from, and that the taxes levied by said back assessment were paid by the said plaintiff without protest, and the same has now become and is *res adjudicata*, and the plaintiff, Pauline J. Gaddis, is now estopped from asserting any claim or right to any refund of taxes paid on account of said assessment as aforesaid."

The trial court took the view that, under the case of *Miller* v. *Copeland's Estate*, 139 Miss. 788, 104 So. 176, appellee had been subjected to double taxation to her standing timber; that under the holding in the Copeland case she had already been assessed with and paid taxes on the timber for the years 1919 and 1920, and therefore, when she was back-assessed on the timber by the state revenue agent under section 4740, Code of 1906 (section 7058, Hemingway's Code), for those years, and made to pay taxes thereon again, the result was she was double taxed, and consequently erroneously taxed.

It was held in the Copeland case, in substance, that where lands were assessed for taxes and the assessment approved by the board of supervisors, and no appeal taken from the order of approval by the taxpayer, and the taxes paid, there could be no back assessment by the state revenue agent for the standing timber on such lands, although the owner of the land, in filling out his tax list, failed to make entries as to values in any column other than those provided alone for the value of the land; that the order of approval of the board of supervisors, unappealed from by the taxpayer, was *res adjudicata,* and could not be questioned in a proceeding by the revenue agent to back assess the standing timber on the land of the taxpayer; that the board of supervisors, in approving the assessment of the land, necessarily took into consideration all of its elements of value, including the buildings and other improvements, as well as the standing timber thereon. What was said in the Copeland case of the binding action of the board of supervisors in approving the assessment there involved applies with equal force to the action of the board of supervisors in approving appellee's assessment. The question whether the value of the timber on appellee's land was taken into consideration in the action of the board of supervisors in approving her assessment was *res adjudicata,* as it was in the Copeland case. Appellee, therefore, had the same right to stand upon that judgment of the board as Copeland's estate did, and, if she had appealed upon that ground from the action of the board of supervisors in approving the subsequent back assessment by the revenue agent, the result would have been the same as it was in the Copeland case. But appellee did not appeal from that judgment. On the contrary as set out in appellant's special plea, which the court held bad on demurrer, appellee appeared before the board of supervisors and admitted that in truth and in fact the standing timber on her land had escaped taxation for the years 1919 and 1920; that the former judgment of the board

of supervisors approving her assessment did not in fact, in valuing her land, take in consideration the value of the timber. This situation is an unusual one, it is true, but it does not seem difficult of solution. Under the first judgment of the board, appellee's standing timber was assessed in assessing the value of her land for taxes. The second judgment of the board, approving the back assessment of the revenue agent adjudged with the consent of appellee, according to the allegations of appellant's special plea, that the first judgment of the board was erroneous, because in truth and in fact appellee's standing timber was not considered by the board in approving the first assessment. Neither judgment was appealed from by either party. Now the question is, Which is the final and binding judgment between the parties? Appellee paid the taxes on the timber in pursuance of the last judgment. By doing so she treated the judgment as valid and binding on her. She is presumed to have known what her rights were under the law. Take for illustration, this kind of a case: A owns a piece of real estate assessed at five thousand dollars. The board of supervisors approves the assessment, and its order doing so becomes final. No appeal is taken from the order by either A or the state. The question of the value of A.'s property for taxation therefore has become *res adjudicata* between A and the state and the county in which the property is situated. A thinks over the matter, and decides that he is not doing his duty as a citizen and a taxpayer; that his land ought to have been assessed at at least twice what it had been assessed. He goes to the state revenue agent and so states. Thereupon the state revenue agent back-assesses the land, adding five thousand dollars to its assessed value. This back assessment is approved by the board of supervisors; A being present and agreeing that his property ought to be assessed for taxes at the valuation of ten thousand dollars instead of five thousand dollars. Can he escape the effect of the last judgment of the board of supervisors? We

think not. Putting it differently and leaving out of view appellee's alleged consent to the back assessment by the revenue agent: A is indebted to B in the sum of one thousand dollars. A sues B on the cause of action for eight hundred dollars. Judgment goes against B for eight hundred dollars, which B discharges by payment. After the judgment is satisfied, A claims that through error he has sued and obtained judgment for two hundred dollars less than B was due him, and thereupon sues B for the two hundred dollars. But the suit is on the same cause of action as was involved in the first suit. B lets judgment go against him in the second suit for two hundred dollars without interposing the defense of *res adjudicata.* Is the judgment in the second suit valid and binding? We think so.

We see no irregularity under the statute of the back assessment of appellee's timber by the state revenue agent. In one of the briefs it is contended there is. Furthermore, under the allegations of appellant's special plea it would seem that any irregularities in the proceedings were cured because the jurisdictional things were done, and, in addition, appellee appeared to the proceedings.

The result of these views is that the judgment of the lower court must be reversed, and the cause remanded.

*Reversed and remanded.*